ORIGINAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH                        :
         Plaintiff,                 :   CIVIL ACTION No. 1:CV-01-1192
    v.                              :   (JUDGE RAMBO)
FEDERAL BUREAU OF PRISONS           :   (MAGISTRATE JUDGE SMYSER)
et al.
         Defendants.                :
                                   oOo

**PLAINTIFF'S REPLY TO DEFENDANT'S BRIEF IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

FILED
HARRISBURG
AUG 3 0 2001
MARY E. D'ANDREA, C
DEPUTY CLERK

**COMES NOW** plaintiff Jerome Smith, Pro se, without counsel respectfully submits this "Reply" to Defendant's Brief In Support of Defendant's Motion to Dismiss - Plaintiff's <u>Bivens Action</u> complaint pursuant to 28 U.S.C. § 1331, against the defendant Federal Bureau of Prison Officials.

Plaintiff Jerome Smith, contends that he is in opposition, of defendants request to dismiss the complaint made against them pursuant to 28 U.S.C. § 1331, <u>Bivens Action</u>. Thus, plaintiff submits that the complaint against the defendants, should not be dismissed, as an duplicative of a parallel action already pending in federal court for the reasons stated herein as follows:

**I.   STATEMENT OF THE CASE**

On July 29, 2001, Smith filed a combined Federal Tort Claim Act ("FTCA") pursuant to 28 U.S.C. § 2671 <u>et seq.</u>, and <u>Bivens</u> Complaint against the following defendants: the Federal Bureau of Prisons ("BOP"), Associate Warden Troy Levi, Dr. Biglette, and Physician Assistant ("PA") Bell of FPC Allenwood; as well as Health Service Administrator Terri Ramos and Dr. John Chung of the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Ft. Dix").

-1-

On June 18, 2001, a Report and Recommendation was issued regarding Complaint (No. 1) recommending that Smith's <u>Bivens</u> claim be dismissed and that the FTCA claim against the B.O.P. be dismissed. <u>Smith v. United States, et al.</u>, No. 1:CV-01-1026, Report and Recommendation at 1,4 (M.D. Pa., June 18, 2001)(Smyser, M.J.).

By order of July 10, 2001, the report and recommendation was adopted, Smith's <u>Bivens</u> claims were dismissed, Smith's FTCA claim against the BOP as a defendant. <u>Smith v. United States</u>, No. 1:CV-01-1026, Order (M.D. Pa., July 10, 2001).

On June 29, 2001, Smith filed the instant complaint ("Complaint II") against the above-named defendants regarding the alleged defendants employed by the BOP whom were identified in Complaint I. However, in ("Complaint II"), Smith pointed out that defendant Troy Levi (AW) at Allenwood Federal Prison Camp, had in fact violated his civil rights when he retaliated against Plaintiff for communicating that he was going to contact his attorney, and inform them of the non-treatments for his lower back problems. Thus, Mr. Levi's retaliatory conduct itself is a violation of Plaintiff's right's where Court's have found that there is no independent injury requirement that must be alleged. See <u>Dixon v. Brown,</u> 38 F.3d 379 (8th Cir. 1994).

Moreover, medical staff at both Federal Institutions were deliberate indifference by forcing Plaintiff to perform work beyond his physical capabilities and medical work restrictions for the six years of Plaintiff's incaceration, well knowing that he is an recipient of a social security grant prior to his incaceration due to

-2-

previous work related injuries he sustained. These named individuals in the Bivens Action are directly responsible for the deliberate indifference towards Plaintiff's medical needs, and had full knowledge of Plaintiff's condition in which they were advised by treating doctor's that Smith should receive treatment - to reduce the pain and suffering he is still presently experiencing, and that treatments should be provided strictly symptomatic.

An inmate must rely on prison authorities to treat his medical needs. If they fail to do so, his needs will not be met. This failure may actually produce physical torture or a lingering death - the most immediate concern under the Eighth Amendment - or it may result in pain and suffering which serves no penological purpose.

In either event, the infliction of unnecessary suffering is inconsistent with contemporary standards of decency under modern laws codifying the comon-law principle that the public is requested to care for the prisoner, who cannot, by reason of the deprivation of his liberty, care for himself.

Regardless of whether the deliberate indifference to the serious medical needs of prisoners is manifested by prison doctors in their response to the prisoner's needs, or by prison guards in intentionally delaying or denying access to medical care, or intentionally interfering with the treatment once prescribed, it is actionable under the Civil Rights Statutes. See Estelle v. Gamble, 429 U.S. 97, 50 L Ed2d 251, 97 S.Ct. 285. A constitutional claim is stated when prison officials intentionally deny access to medical treatments or medical care and/or interfere with prescribed treatment. See Todaro v. Ward, 565 F.2d 48 (2d Cir. 1977).

Smith's complaint contains a medical negligence claim under the FTCA. In his <u>Bivens</u> claim, Smith identifies the prison officials whom are directly responsible for this delibarate indifference. Thus, the claims are both different in terms of the first claim alleges a medical malpractice claim, and the second claim lists the prison officials whom failed to take reasonable measures to abate further serious harm.

Doctor Ronald M. Krasnick, MD communicated to prison staff named in the complaint, that Smith should receive treatments to reduce the pain and suffering he had been experiencing due to his falling in Unicor, business office on December 20, 1998. The suggested treatments were not provided, as was recommended. Thus, plaintiff has been and is presently suffering at the hands of prison officials for over three years now. Medical records located at Allenwood Federal Prison Camp - will support plaintiff's allegations.

The Supreme Court has adopted the "deliberate indifference "standard to determine whether officials display the requisite culpable state of mind with respect to conditions of confinement and medical care. Prison officials may be found liable under the deliberate indifference test for denying humane conditions of confinement only if they know that an inmate faces substantial risk of serious harm and then disregard that risk by failing to take reasonable measures to abate it. Further, the subjective approach to deliberate indifference does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event, such as an assault, before obtaining relief.

Both recklessness with respect to the standard of medical care and recklessness with respect to the provision of adequate medical facilities may constitute deliberate indifference to a prisoner's medical needs, which is actionable. <u>Inmates of Allegheny Cty. Jail v. Pierce</u>, 612 F.2d 754 (1979).

### PLAINTIFF SHOULD HAVE RECEIVED SOME SOUGHT OF TREATMENT FOR HIS CHRONIC PAIN

Chronic pain as described in the literature refers to a pain that persist far beyond the usual course of an acute disease or a reasonable time for an injury to heal, or recurs at intervals of up to several months or years. In the case where injury or exacerbation of a pre-existing condition causes pain, it becomes chronic when the pain is still present after the body is determined to have gone through it normal healing period.

It is very important for a individual to be assessed by the physician and enter into a pain clinic. This assessment is undertaken for several reasons, first, to determine that the candidate is appropriate for services that are provided by the pain clinic, or if there are active disease or injury processes that may be contributing to the chronic pain complaints. Another form of treatment that could or should have been provide is biofeedback and relaxtion training. These modalities are particularly useful with specific pain disorders that involve the musculoskeletal system (e.g., back pain, myofacial pain, tension headaches) as well as the autonomic nervous system disorders (e.g., hypertension, Raynaud's disease).

The therapy sequence usually involves the identification of systoms and the therapist conducts a careful history with an analysis of the presenting problems. The ultimate goal is to transfer learning outside the clinic into the home or work setting. As a result, the individual is more aware of the physiological mechanisms influence on pain, and how and when to employ these techniques for pain control. The goal is to increase the overall activity levels of patients.

Furthermore, in reference to Pain Clinics, individuals who are referred to pain clinics may present a variety of emotional problems due to the reaction of encountering long-standing pain complaints. These emotional problems may include reactive depression, anxiety, hypochondriasis, frustration, somatic preoccupation with disease processes, and other personality variables which may act to enhance the development of chronic pain complaints.

Here, prison medical records indicate, that prison officials were well aware of Smith's medical condition concerning his lower back problems. They were also aware that Smith suffered from chronic pain disorder which enhanced his depressive disorder.

Federal Bureau of Prisons Progress Report, indicates that "Smith is assigned regular duty status with medical restrictions of no prolonged standing and no lifting over 15 pounds. File materials indicate there is a history of depression and attempted suicide. And, according to Dr. Ronald M. Krasnick of Rancocas Medical Arts Building of the Rancocas New Jersey Medical Center - (Orthopedic) states that Mr. Smith MRI recently revealed that he was diagnosed with Lumbar disc disease which causes canal stenosis and bilateral neuroforaminal

stenosis. He also has a herniated disc on the right deforming the thecal sac, impinging on the right nerve root". (quoting Exhibit 1 ).

Moreover, Smith is a veteran of the United States Armed Forces serving in the U.S. Army for Six years, and the Pennsylvania Army National Guard for Seven years, with a total of [13] years of honorable service. He was additionally injuried on June 17, 1993, prior to his present incarceration while on active duty for training at Fort Drum, New York military training center. Mr. Bradford James, who is his veterans administration representative had in fact visit with him while at Allenwood Federal Prison Camp. He also is aware of the non-treatments by prison officials at Allenwood federal Prison Camp - and requested that Smith be treated at the Veterans Administration Hospital. His request was denied.

Therefore, the named defendants in the Bivens complaint are well aware of Smith's medical condition, and failed to provide recommended treatments for his condition, in which he still suffers at this present time and will continue to suffer in the future.

On December 13, 2000, Associate Warden Troy Levi, had Smith taking to Segregation Housing Unit - for communicating his intentions to contact a lawyer to complain about the non-treatments he was required to receive to reduce the pain and suffering. As a result Smith experienced a depressive episode due to the (AW's) arrogants.

-7-

## QUESTIONS AND POINTS FOR DISCUSSION

An indigent inmate will often not have the money to pay the filing fee required when filing a lawsuit or an appeal in a federal court. The inmate can then file a petition with the court under 28 U.S.C. § 1915(a) seeking leave to proceed in forma pauperis.

Even if the court determines, however, that the inmate lacks the funds to prepay the full filing fee, the court must normally require the inmate to pay a partial filing fee before proceeding in forma pauperis . . .

20% of the greater of the average monthly deposits in the inmate's prison trust-fund account or the average monthly balance in the account in the six months preceding the filing of the complaint or appeal. 28 U.S.C. § 1915(b)(1). Plaintiff is presently paying the filing fee cost under the Administrative Order issued by the court on June 29, 2001.

Prison officials has also informed plaintiff, that even if he were to refuse to sign Form 24, <u>Request for Withdrawal of Inmate Personal Funds</u>, his <u>Bivens Action</u> against the defendant's BOP could be dismissed, and the funds could still be withheld and forwarded to the Court. <u>See</u> <u>Newlin v. Helman,</u> 123 F.3d 429 (7th Cir. 1997); see also (Attach Copy of Court Order - Exhibits "A" - "B").

One reason given by the Supreme Court for applying a more lenient standard when testing the sufficiency of a complaint filed by an inmate seeking leave to proceed in forma pauperis was that a plaintiff faced with a Rule 12(b)(6) motion would receive notice, through the motion, of deficiencies in the complaint; the plaintiff could then often amend the complaint, avoiding a dismissal. By contrast, since sua-sponte dismissals - dismissals on the court's own motion - were contemplated by, and often occurred under 28 USC § 1915 when screening indigent inmates' petitions to proceed in forma pauperis, an indigent litigant's suit could be dismissed without the plaintiff ever having had any real opportunity to rectify deficiencies in the complaint before it was dismissed. Consequently, under

the test set forth in **Neizke,** courts had to be especially careful to ensure that a complaint was baseless before dismissing it at the in-forma-pauperis stage of the litigation.

The Supreme Court has enunciate principles to be applied by the lower courts when determining whether factual allegations in a complaint are "frivolous". The Court concluded that just because it is unlikely that the events recounted in a complaint occurred, a complaint cannot be dismissed as factually frivolous. The factual allegations must instead be clearly baseless to warrant dismissal. Id. at 32, 112 S.Ct. at 1733. See also Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992).

## CONCLUSION

For the reasons stated above, Smith's complaint against the defendants in his Bivens Action should not be dismissed as being duplicative of the Complaint filed by Smith at Civil No. 1:CV-01-1026.

Dated: August 25, 2001

Respectfully submitted,

*/s/ Jerome Smith*
Jerome Smith #19145-018
Allenwood Federal Prison Camp
Dorm C
P.O. Box 1000
Montgomery, Pa 17752

-10-

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH                           :
         PLAINTIFF                     :   CIVIL COMPLAINT No. 1:CV-01-1192
   v.                                  :   (JUDGE RAMBO)
FEDERAL BUREAU OF PRISONS,             :
et al.
         DEFENDANTS                    :
                                      oOo

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that he is an inmate at Allenwood Federal Prison Camp - P.O. Box 1000 - Montgomery, Pennsylvania 17752.

That on August 25, 2001, he served a copy of the attached

**PLAINTIFF'S REPLY TO DEFENDANT'S BRIEF
PURSUANT TO MOTION TO DISMISS**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Allenwood Federal Prison Camp, Montgomery, Pennsylvania.

Addressee:

Mark E. Morrison
Assistant U.S. Attorney
228 Walnut Street
P.O. Box 11754
Harrisburg, Pa 17108-1754

*Jerome Smith*
Jerome Smith, Plaintiff
Allenwood Federal Prison Camp
Dorm C
P.O. Box 1000
Montgomery, Pa 17752

A T T A C H M E N T

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: : Civil Action No. 1:01-cv-01192
:
Inmate: Jerome Smith :
ID Number: 19145-018

ADMINISTRATIVE ORDER

The individual identified above has initiated a civil complaint in the U.S. District Court for the Middle District of Pennsylvania. The filing fee for this action is $150.00.

Pursuant to the Prison Litigation Reform Act and Standing Order No. 96-1 of this court, the Superintendent/Warden of the institution where this inmate is incarcerated is directed to furnish the court and the inmate with a certified copy of the statement for the past six months of the prisoner's trust fund account (or institutional equivalent). The Superintendent/Warden is also directed to remit from the prisoner's account, in monthly installments, the full $150.00 fee.

As soon as funds are available in the inmate's prison account, the Superintendent/Warden shall submit an initial partial payment of 20 percent of the greater of:

(1) the average monthly deposits to the inmate's prison account for the past six months, or

(2) the average monthly balance in the inmate's prison account for the past six months.

The remittance must be accompanied by a statement of the calculations used to arrive at the amount, a copy of which you shall furnish to the inmate.

After the initial payment, if there remains any unpaid fee due and

**EXHIBIT "A"**

owing the Court, the Superintendent/Warden in any institution where the inmate is incarcerated is required by law to set aside and remit on a monthly basis 20 percent of the preceding month's deposits credited to the prisoner's account until the filing fee has been paid in full. Each time a deposit is made to the inmate's account, the Superintendent/Warden shall set aside the deposit immediately before any disbursement is made by the inmate, until an amount equal to 20 percent of the previous month's deposits is obtained. When the 20 percent amount is obtained, it shall be transmitted in one monthly payment to the Clerk. Each payment shall be clearly identified by the name of the prisoner and the number assigned to this action.

Payments must be made payable to "Clerk, U.S. District Court" and transmitted to:

>    U.S. District Court
>    P.O. Box 1148
>    Scranton, PA  18501-1148

In the event the plaintiff is transferred to a different correctional facility before the full filing fee is paid, you must forward this Administrative Order to the Superintendent/Warden of the receiving institution. This Order will be binding on the Superintendent/Warden of any correctional facility where the prisoner is incarcerated until the filing fee is paid in full.

>                                    MARY E. D'ANDREA
>                                    Clerk of Court
>
>                                    By: _____
>                                        Deputy Clerk

DATE: June 29, 2001



U.S. Department of Justice

Federal Bureau of Prisons

*Consolidated Legal Center - Allenwood*

P.O. Box 1500
White Deer, PA 17887

DATE:        July 16, 2001

REPLY TO
ATTN OF:     Consolidated Legal Center - Allenwood

SUBJECT:     Court Filing Fee

TO:          Inmate SMITH, Jerome
             Register No. 19145-018

Enclosed is a copy of a court order directing payment of your filing fee pursuant to 28 U.S.C. § 1915 involving a civil action you recently filed. To implement the order, you are hereby instructed to sign the attached Form 24, <u>Request for Withdrawal of Inmate Personal Funds</u>. The form is addressed to the Court for payment of your filing fee of $105.00. The order directs the procedures for payment of the filing fee.

It is your responsibility to ensure payment of the filing fee. If you refuse to sign the attached Form 24, your case may be dismissed. Furthermore, certain courts have directed us to withhold funds even if you refuse to sign the required form. See <u>Newlin v. Helman</u>, 123 F.3d 429 (7th Cir. 1997).

Any questions or concerns can be brought to the attention of your Unit Team who attends mainline at your institution.

*Jerome Smith*
Inmate's Signature

Witnessed this 18th day of July, 2001.

*[signature]* Correctional Counselor
Staff Witness/Position

EXHIBIT "B"

EP-S187.058  PROGRESS REPORT CDFRM
FEB 94
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISO

| Institution | Date |
|---|---|
| FCI Fort Dix, NJ | 01-19-2000 |

*Jerome Smith*                    Inmate Reviewed

| Inmate's Signature | Date | Staff Signature |
|---|---|---|
| SMITH, Jerome | 01-19-2000 | Laura A. Mason |

### 1. Type of Progress Report

| Initial | Statutory Interim | Pre-Release |
|---|---|---|
| Transfer | X Triennial | Other_____ |

| 2. Inmate's Name<br>SMITH, Jerome | 3. Register Number<br>19145-018 | 4. Age (DOB)<br>41(04-09-1958) |
|---|---|---|

5. Present Security/Custody Level
   Low Security/In Custody

6. Offense/Violator Offense
   False Statement in Connection with Acquisition of a Firearm

7. Sentence
   100 Months 3559 SRA Sentence with 3 Years of Supervision to Follow and
   a $100.00 Felony Assessment

| 8. Sentence Began<br>09-16-1996 | 9. Months Served<br>37 + 337 days JCT | 10. Days GCT/or EGT/S<br>162 GCT |
|---|---|---|
| 11. Days FSGT/WSGT/DGCT<br>0/0/0 | 12. Projected Release<br>01-17-2003 GCT | 13. Last USPC Action |

14. Detainers/Pending Charges
    There are no known pending detainers or charges.

15. Co-defendants
    Refer to PSI

For Continuation Pages, type on a blank sheet with the Inmate's Name,
Register No., and Date and attach to this form.

Record Copy - Inmate File; copy - U.S. Probation Office; copy - Parole Commission Regional Office (If applicable); copy -
Inmate (This form may be replicated via WP) Replaces all BP-CLASS-3 and BP-187(58) of NOV 90

Exhibit # 1

# PROGRESS REPORT

**NAME:** SMITH, Jerome        **REG.:** 19145-018    **DATE:** November 5, 1999

16. **INSTITUTIONAL ADJUSTMENT**: Mr. Smith has displayed a satisfactory adjustment to incarceration. He has received one incident report during his incarceration on April 16, 1996. His contact with staff and inmates has been appropriate.

A. **PROGRAM PLAN**: Mr. Smith arrived at FCI Fort Dix, New Jersey, on September 30, 1996, for his Initial Classification. The Unit Team recommended he participation in the Financial Responsibility Program (FRP the General equivalency Diploma Program (GED), Correctional Counseling Groups, Alcoholics Anonymous (AA) and that he be assigned to an appropria work detail. In addition, Mr. Smith has initiated a program to inform other veteran inmates of rights and entitlements.

B. **WORK ASSIGNMENT**: Mr. Smith is currently assigned to UNICOR Business Office where he receives satisfactory work reports from his detail supervisor.

C. **EDUCATIONAL/VOCATIONAL PARTICIPATION**: Mr. Smith's records indicate he completed the GED program on November 22, 1996. In addition, he has completed the Parenting Program, Fat Assessment and ACE Essay.

D. **COUNSELING PROGRAM**: Mr. Smith has completed the 40 hour drug program.

E. **INCIDENT REPORTS**: Mr. Smith has received the following incident repor during his current confinement:

| DATE | INCIDENT/CODE | DISPOSITION |
|---|---|---|
| 04-16-1996 | 203/Threatening Bodily Harm | DHO: 30 Days Loss of Visitir Privileges |

F. **INSTITUTIONAL MOVEMENT**: Mr. Smith was initially designated to FCI Butner on January 3, 1996, for Psychiatric Study. He was then transferre to FCI Fort Dix on September 30, 1996, for service of his sentence. Ther has been no further institutional movement.

G. **PHYSICAL AND MENTAL HEALTH**: Mr. Smith is assigned regular duty status with medical restrictions of no prolonged standing, and no lifting over pounds. File materials indicate there is a history of depression and attempted suicide. Additionally, Mr. Smith has a long history of drug abuse (particularly cocaine). Mr. Smith has also been diagnosed with PTS mood swings and insomnia. Furthermore, according to Dr. Ronald M. Drasni of the Rancocas Medical Arts Building (Orthopedic) Mr. Smith's MRI recent revealed that he was diagnosed with Lumbar disc disease which causes cana stenosis and bilateral neuroforaminal stenosis. He also has a herniated disc on the right deforming the thecal sac, impinging on the right nerve root. The aforementioned condition allows Mr. Smith to only perform work within the institution allows him to remain in a seated.

# PROGRESS REPORT

NAME: SMITH, Jerome          REG.: 19145-018          DATE: November 5, 1999

H.  **PROGRESS ON FINANCIAL RESPONSIBILITY PLAN**: At the time of sentencing, Mr. Smith was responsible for a $100.00 Felony Assessment Fee. All of the financial obligations are paid in full. Mr. Smith is not responsible for the Cost of Incarceration Fee (COIF). Mr. Smith has no other financial obligations of issue.

17. **RELEASE PLANNING**: Mr. Smith is a legal resident of Lakeland, Florida. Upon his release he intends to reside in Florida with his family.

A.  **Residence**:      5600 Old Tampa Hwy.
                        Lakeland, Florida 32501

B.  **Employment**:     To be determined.

C.  **CUSPO**:
    (Sentencing)        Barry M. Polsky, CUSPO
                        United States Probation Office
                        Eastern District of Pennsylvania
                        Federal Office Building
                        600 Arch Street, Suite 2400
                        Philadelphia, PA 19106-1679

D.  **Relocation**:     N/A

E.  **Release Preparation Program**: Mr. Smith is scheduled to participate in the Release Preparation Program. He has elected to participate in the following programs: Computer VT, Social Security Administrator, and Stress Management.

"Offender is subject to notification under 18 U.S.C. 4042 (b).

18. **DICTATED BY**:    _[signature]_                          DATE: 01-19-2000
                        L. A. Mason, Case Manager

19. **DATE TYPED**:     January 19, 2000

20. **REVIEWED BY**:    _[signature]_                          DATE: 01-19-2000
                        Eric Mckinnon
                        Unit 1 Manager